IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HEATHER HAYS KING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-2662 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Doc. 9) and Defendant's Cross-Motion for Summary Judgment (Doc. 10). The court has considered the motions, the responses, the administrative record, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motion be **GRANTED** and Defendant's motion be **DENIED** and this action be **REMANDED** to the Commissioner.

## I. Case Background

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") regarding Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act (the "Act"). Plaintiff seeks benefits for a closed period,

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Doc. 9.

October 31, 2008, through December 31, 2008.

## A.  **Medical History**[2]

Plaintiff was born on September 15, 1972, and was thirty-six years old on the date of the alleged onset of disability.[3] Plaintiff completed two years of college and had completed training at a culinary school.[4]  Plaintiff previously worked as a catering manager and event coordinator.[5]  Plaintiff suffers from rheumatoid arthritis ("R.A.") and had undergone multiple surgeries on her knees and wrist prior to her onset date.[6]

Plaintiff began receiving treatment at the Kelsey-Seybold Clinic for R.A. in 2002.[7]  Plaintiff gave birth to twins in June 2007.[8]  Plaintiff visited the Kelsey-Seybold Clinic on eight occasions between June and October 2008, and on six occasions during the two month period between Plaintiff's onset date and her

---

[2]     In order to qualify for benefits, a plaintiff must establish that she became disabled prior to the last date insured within the meaning of the statutes and regulations.  <u>Carey v. Apfel</u>, 230 F.3d 131, 134 (5th Cir. 2000); <u>see also</u> 42 U.S.C. §§ 416(i)(3), 423(c)(1); 20 C.F.R. §§ 404.130-404.132.  In this case, Plaintiff's last date insured is December 31, 2008.  <u>See</u> Tr. of  the Admin Proceedings ("Tr.") 22.  Because of these limitations, the court confines its review of the medical record to evidence that bears upon Plaintiff's ability to work between October 31, 2008, and December 31, 2008.

[3]     <u>See</u> Doc. 4, Tr. of the Admin. Proceedings ("Tr.") 117.

[4]     <u>See</u> Tr. 132.

[5]     <u>See</u> <u>id.</u>

[6]     <u>See</u> Tr. 753.

[7]     <u>See</u> Tr. 647, 752.

[8]     <u>See</u> Tr. 663.

last date insured.[9]

On June 4, 2008, Plaintiff visited Dr. Lamothe at the Kelsey-Seybold Clinic.[10]   Plaintiff reported that six weeks between infusion treatments was too long, and Dr. Lamothe discussed the possibility of Rituxan infusion.[11]   Dr. Lamothe noted that Plaintiff's right knee was swollen.[12]

On June 16, 2008, Plaintiff visited the Kelsey-Seybold Clinic for an intravenous infusion of 300 mg of Remicade.[13]

On July 7, 2008, Plaintiff again visited Dr. Lamothe.[14]   Dr. Lamothe noted that Plaintiff's knee remained swollen.[15]   Plaintiff reported pain in her knee and left shoulder.[16]

On July 14, 2008, Plaintiff returned to the clinic for another infusion of Remicade.[17]   Plaintiff was also provided with Benadryl and Tylenol Arthritis.[18]   Plaintiff rated her pain as a three on a

---

[9]   See Tr. 754.

[10]   See Tr. 696.

[11]   See Tr. 695-96.

[12]   See Tr. 696.

[13]   See Tr. 694.

[14]   See Tr. 692.

[15]   See id.

[16]   See id.

[17]   See Tr. 690.

[18]   See id.

five-point scale.[19]

On July 29, 2008, Plaintiff visited Dr. Lamothe at the Kelsey-Seybold Rheumatology Clinic.[20]  Plaintiff reported a flare-up of her R.A.[21]  Plaintiff reported that her knee pain had not improved.[22]

On September 22, 2008, Dr. Lamothe prescribed an infusion of 1000 mg of Rituxan, a monoclonal antibody used both in the treatment of leukemia and for moderate-to-severe R.A.[23]

On October 13, 2008, Plaintiff visited the rheumatology clinic for another infusion.[24]  Prior to the infusion, Plaintiff reported her pain was a three on a five-point scale.[25]  During the infusion, Plaintiff experienced a reaction and the Rituxan was discontinued.[26]

On October 20, 2008, Plaintiff again visited Dr. Lamothe.[27] Dr. Lamothe noted that Plaintiff's knee was swollen.[28]  Plaintiff was additionally given a flu shot.[29]

---

[19]   See id.

[20]   See Tr. 689.

[21]   See id.

[22]   See Tr. 688.

[23]   See Tr. 685.

[24]   See Tr. 683.

[25]   See Tr. 679.

[26]   See id.

[27]   See Tr. 680.

[28]   See Tr. 678.

[29]   See id.

4

On November 5, 2008, Plaintiff received a 250 mg infusion of Orencia.[30]   On November 12, 2008, Plaintiff received a second infusion of Orencia, this time for 500 mg.[31]   Prior to the infusion, Plaintiff reported her pain was a four on a five-point scale.[32]

On November 21, 2008, Plaintiff visited the Kelsey-Seybold Clinic where she was examined by Adam Mitchell, M.D. ("Dr. Mitchell").[33]   Plaintiff reported chest tightness and a fever and was diagnosed with bronchitis.[34]   She reported no new infections or complications.[35]

On December 1, 2008, Plaintiff returned to the rheumatology clinic and received an infusion of 500 mg of Orencia.[36]   Plaintiff reported that she had been in pain for several days.[37]

Plaintiff returned to the clinic on December 15, 2008.[38]   Plaintiff was treated with 500 mg of Orencia.[39]   Plaintiff stated

---

[30]   See Tr. 677.

[31]   See Tr. 676.

[32]   See id.

[33]   See Tr. 217.

[34]   See id.

[35]   See id.

[36]   See Tr. 675.

[37]   See id.

[38]   See Tr. 673.

[39]   See Tr. 672.

that she had recently had a procedure done on her right knee.[40] Plaintiff reported increased anxiety, prompting Dr. Lamothe to prescribe Paxil.[41]

On December 23, 2008, Plaintiff returned to Dr. Mitchell at the Kelsey-Seybold Clinic.[42] Plaintiff complained of a sore throat and chest congestion that had lasted several days.[43] Plaintiff also reported increased irritability and disclosed that she had recently been prescribed Paxil but that she had not been taking it frequently because she was not depressed.[44]

**B.  Application to Social Security Administration**

Plaintiff filed for disability insurance benefits on August 30, 2011, claiming an inability to work due to R.A., Crohn's disease, and Prinzmetal's angina.[45]

In a disability report, Plaintiff stated that she had opened a small business in 2004 to accommodate her health limitations, but that she had to decrease her work responsibilities in 2008.[46] Plaintiff listed three current prescriptions for R.A., one

---

[40]   See id.

[41]   See Tr. 671, 673.

[42]   See Tr. 220.

[43]   See id.

[44]   See Tr. 218, 220.

[45]   See Tr. 117, 131.

[46]   See Tr. 131.

prescription for Crohn's disease, and one for angina, along with a prescription for Vicodin for general pain relief.[47]

On September 19, 2011, Roberta Herman, M.D., ("Dr. Herman") completed a case assessment form.[48] Dr. Herman opined that there was insufficient evidence prior to Plaintiff's last date insured to support a finding of disability.[49]

On March 22, 2013, Dr. Lamothe completed a questionnaire evaluating Plaintiff's residual functional capacity ("RFC").[50] Dr. Lamothe opined that Plaintiff experienced moderate-to-severe joint pain, joint swelling, had needed knee and wrist surgery, and Plaintiff's condition had lasted more than twelve months.[51] Dr. Lamothe reported that Plaintiff's pain was severe enough to constantly effect Plaintiff's concentration, and that she was incapable of even low stress jobs.[52] Dr. Lamothe opined that Plaintiff could sit or stand for ten minutes at a time, would need to take short breaks every half hour, and needed a cane or other assistive device to ambulate.[53] Dr. Lamothe stated that Plaintiff could frequently lift less than ten pounds, but could never lift

---

[47]   See Tr. 134.

[48]   See Tr. 287.

[49]   See id.

[50]   See Tr. 595-99.

[51]   See Tr. 595.

[52]   See Tr. 596.

[53]   See Tr. 597.

ten pounds or more.[54] Dr. Lamothe opined that Plaintiff could use her right hands, fingers, and arms only ten percent of an eight-hour workday, and her left hand only fifty percent of a workday.[55] Dr. Lamothe noted that in addition to R.A. and associated joint damage, Plaintiff suffered from Crohn's disease.[56]

On April 8, 2013, Dr. Lamothe wrote a letter stating that, in his opinion, Plaintiff had been disabled since October 31, 2008.[57]

Plaintiff's application was denied at the initial and reconsideration levels.[58] Plaintiff requested a hearing before an administrative law judge ("ALJ") of the Social Security Administration.[59] The ALJ granted Plaintiff's request and conducted a hearing on April 10, 2013.[60]

## C. **Hearing**

Plaintiff and a vocational expert ("VE") testified at the hearing.[61] Plaintiff was represented by an attorney.[62]

Plaintiff testified that for several years she had worked

---

[54]   See id.

[55]   See Tr. 598.

[56]   See Tr. 599.

[57]   See Tr. 752.

[58]   See Tr. 79, 87-89.

[59]   See Tr. 91.

[60]   See Tr. 32-77.

[61]   See Tr. 32.

[62]   See id.

8

part-time for a catering business that she had co-founded but was unable to earn a salary.[63]   Plaintiff stated that pain made it difficult to focus and concentrate and that her medications additionally depressed her immune system, making her more susceptible to infection.[64]

Plaintiff's attorney then questioned Plaintiff regarding the procedure for Remicade treatments.[65]   Plaintiff stated that she needed to be driven to the clinic where she was attached to an intravenous drip and given Benedryl to fall asleep, then provided the medication over an hour and a half to two hour period.[66] Plaintiff was then observed to ensure she did not have a reaction to the infusion.[67]   Plaintiff testified that after the infusions, she was "knocked out" and unable to do anything but rest for the remainder of that day and the following day.[68]

Plaintiff testified that Dr. Lamothe had been her treating physician for R.A. since 2002 and that he had told her in the fall of 2008 that, in his opinion, she could no longer work full-time.[69] Dr. Lamothe also told Plaintiff that she could not work two days in

---

[63]   See Tr. 40-43.

[64]   See Tr. 44-45.

[65]   See Tr. 61-62.

[66]   See Tr. 62.

[67]   See id.

[68]   See id.

[69]   See Tr. 63.

a row and could not spend more than four hours in a kitchen at a time.[70]  Plaintiff testified that her attention and concentration were constantly affected because of pain and medication side effects.[71]

Plaintiff testified that she was given an infusion of Ritaxin with the hope that it would improve her R.A., but that she was unable to continue with the infusion because she had an anaphylactic reaction.[72]

The VE then testified regarding Plaintiff's prior work history.[73]  She found that Plaintiff's previous work was light-exertion, skilled work.[74]  The ALJ then asked the VE if a hypothetical individual limited to light work with only occasional postural maneuvers could perform any of Plaintiff's past relevant work; the VE responded that such an individual could not.[75]

The ALJ asked the VE if such an individual would be capable of working other jobs.[76]  The VE responded that the individual could be employed as an office helper, gate guard, or school bus

---

[70]    See id.

[71]    See Tr. 67.

[72]    See Tr. 64.

[73]    See id.

[74]    See id.

[75]    See Tr. 71.

[76]    See id.

monitor.[77]  The VE testified that for any of the above-listed jobs, employees would have to remain on task eighty percent of the day.[78] Plaintiff's attorney then asked the VE if the individual could retain a full-time job if she had more than two absences per month, and the VE stated that she could not.[79]  The VE additionally opined that if medications required an employee to be off-task more than twenty-percent of the time, that individual would be incapable of finding employment.[80]

## D.  Commissioner's Decision

On May 8, 2013, the ALJ issued an unfavorable decision.[81]  The ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period and that she had multiple impairments (R.A., Crohn's disease, degenerative joint disease, and angina) that were severe.[82]  The ALJ found that Plaintiff's severe impairments, individually or collectively, did not meet or medically equal any listing of the regulations (the "Listings").[83]

---

[77]    Tr. 71-72.

[78]    See Tr. 71.

[79]    See Tr. 75.

[80]    See id.

[81]    Tr. 17-31.

[82]    See Tr. 22

[83]    See id.  The Listings are found at 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.

The ALJ discussed Dr. Mitchell's treatment records.[84]   She found that treating notes indicated that Plaintiff did not receive treatment at the Kelsey-Seybold Clinic for Crohn's disease and R.A. until November 2008.[85]

The ALJ stated that evidence indicated that Plaintiff may be currently disabled, but that during the relevant period there was no indication of the required impairment necessary to support a finding of disability.[86]   The ALJ gave great weight to the opinion of Dr. Herman, who stated there was insufficient evidence during the relevant period, and stated that while Dr. Lamothe's opinion was considered, it could not be applied to the relevant period.[87]

The ALJ found that Plaintiff retained the RFC to perform light work with additional limitations including occasionally climbing stairs or ramps, only occasionally balancing, stooping, kneeling, crouching, and crawling, and limited to low entry semi-skilled work due to distraction from pain and medication.[88]   The ALJ found that Plaintiff was unable to perform past relevant work, but that there were jobs that existed in significant numbers that Plaintiff could

---

[84]     See Tr. 23-24.

[85]     See Tr. 23.   The ALJ appears to base this finding on Plaintiff's first visit with Dr. Mitchell, not her first treatment at the Kelsey-Seybold Clinic, which occurred in October 2002.   See Tr. 751.

[86]     See Tr. 24.

[87]     See Tr. 26.

[88]     See Tr. 24.

perform.[89]   The ALJ found that Plaintiff could work as an office helper, office clerk, or mail sorter.[90]

Although the ALJ found that Plaintiff's medically determinable impairments could cause her claimed symptoms, the ALJ did not find Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" to be credible to the extent they were inconsistent with the ALJ's RFC determination.[91]  Relying on the VE's testimony that a hypothetical individual with Plaintiff's limitations could not perform her past relevant work, but could perform work that existed in significant numbers in the national economy, the ALJ found Plaintiff not to be disabled.[92]

Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request for review, thereby transforming the ALJ's decision into the final decision of the Commissioner.[93] Plaintiff then timely sought judicial review of the decision by this court.[94]

## II.  Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner

---

[89]    See Tr. 26.

[90]    See Tr. 27.

[91]    See Tr. 25.

[92]    See Tr. 26.

[93]    See Tr. 1-7, 15-16.

[94]    See Doc. 1, Pl.'s Compl.

denying disability benefits is limited to the determination of whether: (1) the ALJ applied proper legal standards in evaluating the record; and (2) substantial evidence in the record supports the decision. Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002).

**A.  Legal Standard**

In order to obtain disability benefits, a claimant bears the ultimate burden of proving he is disabled within the meaning of the Act. Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); see also Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3); see also 42 U.S.C. § 423(d)(5)(A) Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe

14

impairment;" (3) a claimant whose impairment meets or is equivalent to [a Listing] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform her previous work as a result of his impairment, then factors such as his age, education, past work experience, and [RFC] must be considered to determine whether [s]he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. § 404.1520. The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled. Greenspan, 38 F.3d at 236.

## B. **Substantial Evidence**

The widely accepted definition of "substantial evidence" is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). It is "something more than a scintilla but less than a preponderance." Id. The Commissioner has the responsibility of deciding any conflict in the evidence. Id. If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm. 42 U.S.C. § 405(g); Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). In applying this standard, the court is to review the

entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment.  Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).  In other words, the court is to defer to the decision of the Commissioner as much as is possible without making its review meaningless.  Id.

A failure to controvert facts by competent summary judgment evidence may lead the court to accept them as undisputed.  See Fed. R. Civ. P. 56(e).  Summary judgment is not awarded by default because a motion is undisputed.  See Ford-Evans v. Smith, 206 F. App'x 332, 334 (5th Cir. 2006); Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 362 n. 3 (5th Cir. 1995); John v. State of Louisiana (Board of Trs. for State Colls. and Univs.), 757 F.2d 698, 708 (5th Cir. 1985).  Summary judgment is appropriate only if the moving parties demonstrate the absence of a genuine issue of material fact and show that judgment is warranted as a matter of law.  See Adams v. Travelers Indem. Co. of Conn., 465 F.3d 156, 164 (5th Cir. 2006); Hetzel, 50 F.3d at 362 n. 3.

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.  Specifically, Plaintiff asserts that the ALJ erred by failing to consider all of the evidence, failed to accord significant weight to a treating physician's opinion, and failed to include all of Plaintiff's impairments into her RFC.

16

Defendant argues that the decision is legally sound and is supported by substantial evidence.

All of Plaintiff's claimed errors stem from the ALJ's alleged failure to consider all the evidence, specifically the medical evidence and opinions of Dr. Lamothe, Plaintiff's primary treating physician.

The ALJ is required to consider objective medical evidence in determining whether a plaintiff is disabled. See C.F.R. § 404.1529. Defendant argues that the ALJ is not required to explicitly discuss all of the evidence and state why she rejected or accepted each fact. See Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994). However, in this case, the ALJ did not address Dr. Lamothe's treatment records at all; the ALJ found that Dr. Lamothe's RFC and April 8, 2013 letter tended to support current disability, but stated that there is no indication that Plaintiff's impairments were disabling in 2008.

Circumstantial evidence supports the inference that the ALJ did not consider this evidence. The ALJ gave a detailed discussion of Plaintiff's treatment history with Dr. Mitchell even beyond the relevant period, but did not discuss Dr. Lamothe's records at all, even though Plaintiff was seen by Dr. Lamothe or received treatment under his direction six times during the relevant period. In addition, the ALJ made basic errors that could have been corrected from a cursory reading of Dr. Lamothe's treatment records: the ALJ

17

incorrectly stated that Plaintiff began receiving treatment at the Kelsey-Seybold Clinic in 2008 and that Plaintiff had twin children in the fall of 2008.  The ALJ additionally placed great weight on the opinion of Dr. Herman, who stated only that insufficient evidence established Plaintiff's disability during the relevant period.  At the hearing, Plaintiff's attorney noted that medical evidence dating back to 2002 had been recently added to Plaintiff's file.  That the ALJ placed great weight on Dr. Herman's opinion even after additional records had been submitted indicates that the ALJ did not consider those records in making his determination.

The Fifth Circuit has determined that the ALJ is required to consider the factors addressed in C.F.R. § 404.1527(d) before declining to give weight to a treating physician.  Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000).  Here, Dr. Lamothe was Plaintiff's primary treating physician for R.A., and his medical evidence during the relevant period was entitled to controlling weight, absent an explanation of good cause.  See id. at 455-56.  Absent such a discussion, the ALJ is not free to ignore treating medical evidence from treating physicians.  See Loza v. Apfel, 219 F.3d 378, 393-94 (5th Cir. 2000).  This failure to consider evidence is reversible error.  Id. at 395.  The court therefore **RECOMMENDS** that this case be **REMANDED** to the ALJ in order to properly give consideration to all the medical evidence.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's motion be **DENIED**, and that this action be **REMANDED** to the Commissioner for further consideration in light of this Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 29th day of September, 2015.

U.S. MAGISTRATE JUDGE

19